IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

----------------------------------------------------------x

CLAIRE KILLIN,

Plaintiff,

vs.

BUTTERCUP CT, LLC, BRUCE THOMAS, DINART SERPA, and ALANA CALVO, in their individual and professional capacities,

Defendants

----------------------------------------------------------x

CIVIL ACTION NO:

COMPLAINT

JURY TRIAL DEMANDED

OCTOBER 9, 2024

**COMPLAINT**

The Plaintiff CLAIRE KILLIN by and through her attorneys, BERLINGIERI LAW, PLLC, as and for her Complaint in this action against the Defendants BUTTERCUP CT, LLC, BRUCE THOMAS, DINART SERPA, and ALANA CALVO, in their individual and professional capacities, respectfully alleges upon information and belief as follows:

**NATURE OF CASE**

1. This is a civil action for damages and equitable relief based upon willful violations that Defendant committed of Plaintiff's rights guaranteed to her by federal and state law, and complains for the following counts: (i) discrimination based on sex, race, color and national origin under Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C.§ 2000e *et seq.*, as amended ("Title VII"); (ii) retaliation under the Title VII; (iii) 42 U.S.C. § 1981; (iv) discrimination based on sex, race, color and national origin under the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60 *et seq.* ("CEFPA"); (v) retaliation under CEFPA; (vi) breach of the covenant of good faith and fair dealing; (vii) negligent supervision, hiring, retention and training; (viii) negligence *respondeat superior*; (x) intentional infliction of emotional distress; (xi) negligent infliction of emotional distress; (xii) unreasonable intrusion

upon the seclusion of another / breach of privacy; (xiii) unpaid minimum wages under the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 206; (xiv) unpaid minimum wages under the Connecticut General Statutes, CGS 31-69b; and (xv) any other claims(s) that can be inferred from the facts set forth herein.

2. Plaintiff seeks monetary relief including, but not limited to: compensatory and punitive damages; attorney's fees and the costs of this action; together with any and all other appropriate legal and equitable relief pursuant to applicable state and federal law.

3. Costs, expert witness fees and attorney's fees are sought pursuant to 42 U.S.C. § 1988.

## **JURISDICTION AND VENUE**

4. This Court has jurisdiction as this case involves a Federal Question under Title VII, 42 U.S.C. § 1981, the FLSA, and 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

5. This Court has supplemental jurisdiction under the State laws of Connecticut. This Court has supplemental jurisdiction over Plaintiff's related claims arising under CEFPA and CGS and any and all state and local law pursuant to 28 U.S.C. §1367 (a).

6. Further, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

7. The Plaintiff is a citizen and resident of the United Kingdom.

8. Plaintiff currently resides in the United Kingdom at the time of the filing of this action.

9. Defendants are either residents/citizens of the State of Connecticut or of the Commonwealth of Massachusetts.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b). The acts and transactions complained of herein occurred in this District, Plaintiff resided in this District and Defendant was and is located in this District.

11. Plaintiff filed claims with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunity Commission ("EEOC") on

about March 8 2024, against Buttercup CT, LLC (CHRO Case No. 2440379 – EEOC No. 16A-2024-00879).

12. On July 15, 2024 the EEOC, issued Plaintiff a Notice of Right to Sue annexed hereto as **Exhibit A**.

13. On July 11, 2024, the CHRO issued Plaintiff a Release of Jurisdiction, annexed hereto as **Exhibit B**.

**THE PARTIES**

14. Plaintiff Claire Killin, complaining of all acts below, resided in the State of Connecticut at all relevant times herein and Plaintiff currently resides the United Kingdom.

15. Defendant Buttercup CT, LLC ("Buttercup") is a Connecticut Limited Liability Company headquartered in Massachusetts at 729 County Street, Taunton, MA, 02780, with multiple Dunkin Donuts store locations in Connecticut including but not limited to 209 Flanders Rd, East Lyme, CT 06333.

16. Upon information and belief, Defendant Bruce Thomas ("Mr. Thomas") was and is a resident of the Commonwealth of Massachusetts and was Owner/Operator, Member and Manager of Buttercup CT, LLC.

17. Upon information and belief, Defendant Dinart Serpa ("Mr. Serpa") was and is a resident of the Commonwealth of Massachusetts and was Owner/Operator, Member and Manager of Buttercup CT, LLC.

18. Upon information and belief, Defendant Alana Calvo ("Ms. Calvo") was and is a resident of the State of Connecticut was a Buttercup store manager at the East Lyme Dunkin location.

## BACKGROUND FACTS

19. Plaintiff's sex/gender is female.

20. Plaintiff's race is Caucasian, color is white and nation of origin is United Kingdom (England).

21. Defendants treated Plaintiff differently due to her gender/sex, race/color/nation of origin and her young age (Plaintiff was 17 – 18 years old during her employment).

22. Plaintiff was an exceptional employee throughout her employment and was a top performer receiving customer praise and recognition of her commitment and skills to the Defendants.

23. Defendants failed to prevent the severe and pervasive of Plaintiff in the workplace.

24. The Defendants permitted former employee Stephen Nicholson a 35 year old (male, white, nation of origin United States) ("Mr. Nicholson") to harass Plaintiff (who was a minor when she met Mr. Nicholson at age 17 during her employment) severely on the basis of her sex/gender during her employment and thereafter due to Defendants' breach of Plaintiff's privacy.

25. Ms. Calvo (white, female, 20s, nation of origin United States) lived at Mr. Nicholson's home and encouraged Mr. Nicholson to harass Plaintiff sexually throughout her employment and provided Mr. Nicholson with Plaintiff's personal information provided during the course of her employment for employment purposes only.

26. Ms. Calvo provided Mr. Nicholson with Plaintiff's personal information such as home address, phone number and email.

27. The Defendants put Plaintiff at severe personal risk and danger.

28. Mr. Nicholson has stalked Plaintiff in person and online, at work and at home and has made sexual comments and inappropriate aggressions towards Plaintiff.

29. Mr. Nicholson would go to lengths to advance on Plaintiff in a sexual and in appropriate ways, for example, Mr. Nicholson messaged Plaintiff and made inappropriate sexual comments to her.

30. Mr. Nicholson also purchased an identical t-shirt that Plaintiff wore to the workplace on her day off, apparently Mr. Nicholson went online, and researched Plaintiff's t-shirt (marketed for women) and purchased it and wore it to work soon thereafter to spark conversation about the shirt that Plaintiff wore only once in his presence.

31. Ms. Calvo frequently drank alcohol on the job and encouraged under aged employees including Plaintiff to consume alcoholic beverages at work.

32. Ms. Calvo encouraged her assailant managers to do the same and pass out alcohol to minors at work.

33. Plaintiff reported the alcohol use and misconduct to Jenn the Defendants Human Resources / manager.

34. Ms. Calvo and employees bullied Plaintiff in the workplace WhatsApp group chat used for staff communication on scheduling and covering shifts etc.

35. The group chat turned into a hostile work environment and the topics discussed were often inappropriate and illegal, further at frequent opportunities the Defendants manager used the group chat as a public platform to embarrass, bully and harass and permit the harassment and bullying of Plaintiff [such as falsely accusing Plaintiff of writing "tramp" on a cup].

36. Plaintiff reported Mr. Nicholson's sexual harassment on several occasions during her employment to management, verbally and in writing to no avail.

37. Defendants failed to investigate Plaintiff's complaints of sexual harassment.

38. In fact, making matters even worse, each and every time that Plaintiff complained to management about sexual harassment or bullying her conditions became significantly worse.

39. Further the Defendants manager fostered a culture of bullying, hate and intolerance against Plaintiff due to her nation of origin.

40. For example, after reporting an employee Marina Slager ("Ms. Slager") to Ms. Calvo for harassment such as name calling, making derogatory comments of Plaintiff's nation of origin (U.K.) and red hair, Ms. Calvo insisted that Plaintiff and Ms. Slager sit down for a meeting, only to put Plaintiff in danger because Ms. Slager began screaming and menacing Plaintiff with a raised chair to throw at Plaintiff (but the employee was stopped by others before she could throw it), and left the workplace without repercussion. Plaintiff was left shocked and Ms. Calvo failed to take any action for the abuse Plaintiff endured. This same employee threw a drink at Plaintiff another day at work.

41. Defendants permitted its employees and managers to mock Plaintiff's British accent.

42. The manager disfavored any employee who stood up for Plaintiff in the group chat, which created a chilling effect on employees speaking out about the blatant harassment and bullying of Plaintiff at work.

43. For example, the employee who stuck up for Plaintiff regarding national origin discrimination was singled out and chastised when they encountered car trouble, but the employees who harassed Plaintiff were not chastised or harassed for having car trouble or calling in late.

44. Defendants' assistant manager Sara Williams agreed and supported Ms. Calvo and also harassed Plaintiff on a basis as well.

45. Defendants permitted its employees and managers to make fun and derogatory harassing comments about her color and Plaintiff's skin tone (white) and red hair.

46. Defendants permitted its employees and managers to make despicable comments regarding the death of Queen Elizabeth II in or around September 8, 2022 to harm Plaintiff as

Plaintiff was devastated by the Queen's death and their mockery added to Plaintiff's emotional distress.

47. Further Ms. Slager physically threatened Plaintiff and made false threats and accusations regarding Plaintiff and also asked Plaintiff (a minor at the time) whether she was sleeping with an older man.

48. Even worse, Ms. Slager also threatened to falsely report Plaintiff to the police for allegedly scratching her car.

49. Further, Ms. Calvo disrespected Plaintiff's school commitments, exam schedules or child labor laws and required Plaintiff to work and encouraged her to skip school.

50. Likewise, Ms. Calvo increased harassment and hostility with scheduling and handling of workplace issues when Ms. Calvo knew that Plaintiff had to take exams or prepare for exams which effected Plaintiff academic performance and mental wellbeing at school.

51. Also, Ms. Calvo would force Plaintiff to perform jobs outside her job description such as clean up unsanitary bathrooms with inadequate or no safety equipment, chemicals or training.

52. Also, Ms. Calvo would single Plaintiff out, for example when Ms. Calvo had issue with the way the store closed on a given night, Plaintiff was the only employee issued a write up, or sent a hostile text message to regarding the store closing.

53. For approximately three weeks in late 2022, Ms. Calvo cut Plaintiff's hours to three to five hours per week total without explanation. However Ms. Calvo admitted to Plaintiff that she had in fact cut Plaintiff's hours because Ms. Calvo thought that Plaintiff was flirting with her boyfriend at work. After confronting Ms. Calvo about cutting her hours, Ms. Calvo admitted that she had cut Plaintiff's hours as a "punishment' although Plaintiff had explained to her Plaintiff had no interest in her boyfriend, especially as Plaintiff was only 17 years old at the time and he is an adult.

54. Likewise, Ms. Calvo encouraged staff to take Plaintiff's shifts away from her (resulting in less income) and foster dissent and confusion in scheduling [frequently changing the schedule to provide more hours to favored employees].

55. Even more disconcerting Ms. Calvo would demand Plaintiff serve moldy bread and insect infested food product to Defendants' customers.

56. Plaintiff refused to serve the moldy bread and spoiled foods and faced retribution from her manager for failing to comply with her manager's obviously dangerous and unlawful directives with lack of any food safety measures.

57. The Defendants failed to conduct meaningful training on food safety or policy.

58. The Defendants failed to conduct mandated CHRO sexual harassment training.

59. The Defendants frequently changed Plaintiff's shifts and schedule and took away hours to discriminate and in retaliation to Plaintiff reporting harassment or misconduct.

60. The Defendants threatened Plaintiff with discipline and issued Plaintiff three unfair, discriminatory and retaliatory write ups starting in or around January 2023.

61. Plaintiff complained to Defendants that the discipline issued [3 unfair, discriminatory and retaliatory write ups] were in fact discrimination, as other employees similarly situated were not issued similar write ups for the same conduct [purported closing store early with manager approval]. Plaintiff was treated far worse than similarly situated employees.

62. With respect to write ups for closing the store, Plaintiff was singled out by Ms. Calvo.

63. Further in or around early 2023, Plaintiff made several complaints about bullying based on her national origin, sexual harassment and workplace sabotage.

64. In early 2023 up until her termination on May 12, 2023, thereafter until his arrest in March 2024, Mr. Nicholson harassed and menaced Plaintiff.

65. Plaintiff even lodged complaints of harassment and discrimination to Jenn via email and

with Defendants' corporate headquarters in Massachusetts to no avail prior to her termination.

66. The Defendants' human resources failed to investigate Plaintiff's complaints, prior to or after her termination.

67. On or about May 5, 2023, Defendants suspended Plaintiff for 3 purported write ups for "not closing the store properly" and informed Plaintiff to return a week later to find out if she still had a job.

68. Plaintiff returned to work on May 12, 2023, and met with Ms. Calvo and assistant manager, who were hostile and aggressive and laughed at Plaintiff and told her "so we decided you are fired" while laughing and being hostile.

69. In or around the time of her termination or the week thereafter Plaintiff noticed that Mr. Nicholson increased his stalking presence and attempts to contact Plaintiff.

70. Plaintiff has reported Mr. Nicholson's stalking, strange behavior [such as contacting Plaintiff's family in the U.K. and friends after she blocked him online] and harassment [threats] to law enforcement.

71. On May 12, 2023, Defendants terminated Plaintiff's employment.

72. Plaintiff thereafter contacted Defendants' HR and corporate to lodge further complaints in writing about her harassment and discrimination and by phone.

73. From her termination on May 12, 2023, through August 2, 2023 and September 16, 17 2023 up and until January 27, 2024, Plaintiff has contacted Defendants in writing and has communicated on the phone to complain of all factual instances of discrimination, harassment, stalking and also of wage discrepancies after reviewing her paystubs – Plaintiff noticed that her manager committed fraud and wage theft by stealing Plaintiff's wages and tips earned from her paychecks.

74. Defendants failed to investigate any of Plaintiff's complaints that she raised during the

course of her employment or thereafter.

75. Defendants failed to adequately investigate Plaintiff's complaints of discrimination and feeling targeted and singled out.

76. Defendants created a hostile work environment for Plaintiff.

77. The Defendants invaded Plaintiff's privacy by unreasonable intrusion upon her right to seclusion.

78. Plaintiff was disturbed that Defendants had disseminated her information, specifically Ms. Calvo provided Mr. Nicholson Plaintiff's information.

79. Further, Mr. Nicholson used his leverage on Ms. Calvo as Mr. Nicholson permitted Ms. Calvo, her child, her boyfriend and her newborn baby (that was born inside Mr. Nicholson's apartment) to live with him and expressed to Ms. Calvo that he was interested in Plaintiff, but did not have her information and wanted Plaintiff's information.

80. Ms. Calvo provided the Plaintiff's information to Mr. Nicholson.

81. The Defendants inflicted extreme emotional distress onto Plaintiff.

82. Plaintiff's complaints were not taken seriously and were distorted and used against her.

83. Ms. Calvo withheld Plaintiff's pay on several occasions throughout her employment thereby depriving Plaintiff economic employment opportunity and the minimum wage under the FLSA and CGS.

84. Due to Defendants' actions of permitting Plaintiff's personal information to be disseminated she was targeted by Mr. Nicholson and Plaintiff during the abusive period was immobilized by grief, anxiety, mental suffering, fear, depression and more.

85. Plaintiff is currently exploring treatment for mental health due to what she has suffered.

86. Plaintiff was unable to file with the CHRO/EEOC and was not aware of the process in a foreign country and/or could not find an attorney to take her case despite searching for local

counsel to take her case. Plaintiff was devastated for weeks after being let down by 4-5 other lawyers in the ensuing months after her employment ended in or around May 12, 2023, up until March 2024 when her CHRO/EEOC case was filed.

87. During the period of time between June 2023 up until March 7, 2024 and even thereafter, Plaintiff was engaged in a contentious living situation where her former landlord made her life extremely harmful and Plaintiff was the subject of a number of false police reports, threats and contrived eviction proceedings. Further in Plaintiff's former neighborhood in East Lyme, Connecticut, a local father / neighbor engaged in sexual messaging / predation on Plaintiff and send Plaintiff disturbing messages including a picture of his penis, this was a period of time unlike any other period Plaintiff has faced in her life. This period is full of grief and isolation, Plaintiff was incapacitated by all the harm surrounding her, from Mr. Nicholson (who was arrested March 16, 2024, and was harassing her up until her arrest), by her former landlord and neighbor, while cooperating with police, while living alone in a foreign country (Plaintiff's parents returned to the UK in late 2023) resulted in Plaintiff experiencing mentalincapacitation.

88. Plaintiff could not focus on the filing of the CHRO/EEOC complaint while cooperating with the police with the threats that she faced daily from Mr. Nicholson up until his arrest.

89. Plaintiff's ability to gather, explain and provide information to counsel in order to file her CHRO/EEOC complaint by the March 7, 2024 deadline was impeded in part with Plaintiff's need to cooperate with the police investigation due to the nature of that matter.

90. Plaintiff consulted with undersigned counsel in or around mid-February 2024, and retained undersigned counsel on March 7, 2024 [executed retainer agreement March 7, 2024], Plaintiff provided information to begin the CHRO/EEOC complaint drafting process and worked with the undersigned counsel to file her CHRO Complaint immediately thereafter on March 8, 2024.

91. The statute of limitations (300 days) for the Plaintiff to file her CHRO/EEOC complaint should be tolled during her time as a minor and applied during the abusive period due to Mr. Nicholson's harmful misconduct and Equitable Tolling should apply as to the Title VII and CEFPA due to the mental incapacitation and subsequent ability on Plaintiff's ability to file this CHRO/EEOC Complaint.

92. Plaintiff asks this court to narrowly apply the doctrine of equitable tolling for one day.

93. Plaintiff was diligent in pursuing her claims.

94. Plaintiff's deadline was to file with the CHRO/EEOC was March 7, 2024; (300 days from the termination) Plaintiff filed her complaint with the CHRO/EEOC through counsel on March 8, 2024.

95. At the time of the filing of the CHRO/EEOC Plaintiff had only recently retained counsel and provided counsel sufficient information after several initial engagement with local attorneys who in some instances consulted with her and took months to tell Plaintiff they were not going to take her case, and Plaintiff at the last moment was able to secure counsel and missed the deadline due to incapacitation for reasons outside of her control as explained above.

96. On April 21, 2023, Plaintiff turned 18 years old.

97. The majority of the workplace harassment and discrimination occurred against Plaintiff as a minor.

98. Some of the abuse has led Plaintiff to develop severe psychological trauma, stress, PTSD, and anxiety, for example Mr. Nicholson threatened Plaintiff, her family and people that Plaintiff cared about with personal harm and arson.

99. Equitable tolling should apply here in the interest of justice as the Court has the authority to apply the doctrine of equitable tolling in similar unique qualifying circumstances such as mental incapacitation or other serious harm.

100. Plaintiff was incapable of filing the CHRO/EEOC Complaint due to being a minor in a foreign country who was being stalked menaced and abused by Mr. Nicholson and had no support or meaningful responses from Buttercup management on her complaints during the majority of the 300 days from when Plaintiff last experienced discrimination.

101. Plaintiff reported Mr. Nicholson's actions to the police including making abusive physical contact with Plaintiff, forcing and transporting Plaintiff in his car against Plaintiff's will, harassment of Plaintiff, along with his stalking and abusive messaging and communications and the demanding and forcing Plaintiff to purchase things online using Mr. Nicholson's credit card to groom Plaintiff and other young women who worked at Buttercup. (Mr. Nicholson coerced Plaintiff and two other female coworker's victims who were demanded to purchase items at his demands).

102. Plaintiff informed the police that that Mr. Nicholson placed her life in danger, and relentlessly threatened and stalked her for over a year.

103. For example in October of 2023, Mr. Nicholson made unwanted bodily contact with Plaintiff while she was in his car while driving erratically.

104. Further Mr. Nicholson repeatedly asked Plaintiff to meet with him in person at stores and casinos.

105. In or around March 16, Mr. Nicholson was arrested and charged with eleven counts, two counts of second-degree stalking, second-degree harassment, interfering with an emergency call, coercion, third-degree assault, two counts of second-degree threatening, first-degree reckless endangerment, second-degree kidnapping, first-degree unlawful restraint, and harmful communication with a minor.

106. At the time of the filing of this action the case against Nicholson is pending, but it is unclear from the public docket search if the twelfth count is pending against Mr. Nicholson.

107. As a result of the above described events and unlawful actions of the Defendants, Plaintiff has suffered severe psychological harm which has adversely impacted all aspects of Plaintiff life including education and housing.

108. Due to the intrusion of her privacy and infliction of emotional distress of the Defendants Plaintiff's ability to study and continue her academic success in the United States has been disrupted, and in fact caused Plaintiff to fail a course, something which previously had not occurred. Further, Plaintiff holds a Student Visa; however Plaintiff was forced to drop out of a Connecticut university and was relocated back to the United Kingdom in the Spring of 2024 as a condition of her visa to remain in the United States is to be enrolled in a college or university.

109. Plaintiff's relocation to the United Kingdom and costs and expenses attributed thereto are a direct and proximate cause of the actions of the Defendants harmful conduct.

**Wage and Hour Claims under FLSA and CGS**

110. On each occasion when they paid Plaintiff, Defendants did not provide Plaintiff with a wage statement that accurately reflected, *inter alia*, the amount of hours that Plaintiff worked per week, or pay or each hour that she worked in a week.

111. Plaintiff typically worked from 3:00PM – 8:00PM, with various other scheduled shifts over the weekends.

112. Ms. Calvo deducted hours worked in Plaintiff's time entries prior to submitting the store's payroll to Buttercup's corporate office for payment to employees

113. Buttercup requires its employees to clock in and out of work using the electronic POS (point of sale) computer systems that are used to process customer orders.

114. Defendants had a duty to maintain accurate and correct records reflecting all hours worked for each employee and payment thereto.

115. Defendants failed to maintain accurate employment records under the FLSA and CGS, as

Ms. Calvo frequently altered Plaintiff's hours and pay and took her tips.

116. Defendants Thomas and Serpa own and operate several Dunkin Donuts locations through Buttercup and in doing so order supplies and food product and engage in services and are participants in interstate commerce for their business (Buttercup) that generate more than $500,000.00 per year and is a covered entity under the FLSA.

117. Plaintiff was an hourly wage employee and non-exempt under the FLSA.

118. Plaintiff earned approximately $13.00 - $14.00 per hour during her employment.

119. Plaintiff worked part-time, on average 10-15 hours per week. However some weeks, when Ms. Calvo discriminated against Plaintiff she was only scheduled for 3-5 hours per week.

120. Often times Plaintiff was shorted or not paid each and every hour that she worked, thereby denying her the minimum wage.

121. Upon information and belief, Ms. Calvo was permitted to act / was not stopped from harming Plaintiff by and through Defendant Buttercup, Thomas and Serpa's failure to act.

122. Each hour that Plaintiff worked was for Defendants' benefit.

123. The Defendants failed to comply with the FLSA requirement of employers to keep accurate records of employee wages and hours in accordance with 29 U.S.C. § 211.

124. Defendants acted in the manner described herein to maximize their profits and minimize their labor costs and overhead.

125. Ms. Calvo upon information and belief was terminated from Buttercup after management became aware of Ms. Calvo's payroll practices and inconsistencies regarding other employees missing pay at some point after Plaintiff's termination.

126. Ms. Calvo withheld Plaintiff's tips as a manager and thereby deprived Plaintiff of economic compensation entitled to her.

**AS AND FOR A FIRST COUNT**
**FOR DISCRIMINATION UNDER TITLE VII**
**(as to the employer Defendant only)**

127. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

128. Title VII states in relevant part as follows: SEC. 2000e-2. [Section 703] (a) Employer practices: It shall be an unlawful employment practice for an employer - (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; . . .

129. Defendant the employer Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by allowing discrimination based on national origin/race/color, sex/gender, prior complaints and causing a hostile work environment.

130. The employer Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS AND FOR A SECOND COUNT**
**FOR RETALIATION UNDER TITLE VII**
**(as to the employer Defendant only)**

131. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

132. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

133. The employer Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e *et seq.* by retaliating against Plaintiff with respect to the terms, conditions or privileges of employment because of his opposition to the unlawful employment practices of the employer Defendants.

134. The employer Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS AN FOR THE THIRD COUNT DISCRIMINATION AND RETALIATION IN VIOLATION OF 42 U.S.C. § 1981 (Against all Defendants)**

135. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

136. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

137. 42 U.S.C. Section 1981 states as follows, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like. Punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

138. Section 1981 further states that, "For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

139. Defendant's discrimination against Plaintiff in violation of the rights of Plaintiff as afforded to her by the Civil Right Act of 1866, 42 U.S.C. 1981.

140. By the conduct described above, Defendants intentionally deprived Plaintiff, a white female from the United Kingdom, of the same rights as are enjoyed by non-whites of United Kingdom national origin employees, to the creation, performance, enjoyment and all benefits and

privileges of her employment relationship with Defendants.

141. As a result of Defendants' discrimination in violation of Section 1981, Plaintiff has been denied employment opportunities providing substantial compensation and benefits, thereby entitling them to injunctive and equitable monetary relief, and has suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of Defendants' actions, thereby entitling them to compensatory damages.

142. Defendants acted with malice or reckless indifference to the rights of the above-named Caucasian female, thereby entitling her to an award of punitive damages.

143. To remedy the violations of the rights of Plaintiff secured by Section 1981, Plaintiff requests that the Court award the relief prayed for below.

**AS AN FOR THE FOURTH COUNT**
**DISCRIMINATION IN VIOLATION OF**
**CONN. GEN. STAT. § 46a60(A)(1)**
**(as to the employer Defendant only)**

144. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

145. Plaintiff was treated in a disparate manner in the terms and conditions of his employment, on the basis of race/color, national origin, sex/gender and prior complaints.

146. The employer Defendants' conduct is unlawful and in violation of CFEPA.

147. As a result of the employer Defendants' unlawful conduct, Plaintiff has suffered, and will continue to suffer damages, including but not limited, to substantial lost wages, fringe benefits, health insurance, retirement and pension benefits, mental and emotional distress and the ability to enjoy life's pleasures.

148. Plaintiff seeks damages as a result of Defendants' unlawful conduct.

**AS AND FOR THE FIFTH COUNTRETALIATION IN VIOLATION OF CONN. GEN. STAT. §46a-60(a)(4) (as to the employer Defendant only)**

149. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

150. Plaintiff engaged in protected activity under the CFEPA by complaining to Defendant about harassment and discrimination.

151. Defendant created a hostile work environment due to Plaintiff's employment because of her prior complaints.

152. The adverse employment actions to which Plaintiff was subjected were the direct consequence and in retaliation for Plaintiff's opposition to unlawful discrimination.

153. The Defendant's actions violate CFEPA.

154. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages that include but are not limited to: lost or reduced wages, fringe benefits, health insurance benefits, and pension payments; emotional and psychological distress, stress, anxiety; physical injury; and the loss of the ability to enjoy life's pleasures and activities.

**AS AND FOR THE SIXTH COUNT BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING (as to the employer Defendant Only)**

155. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

156. The contractual relationship between the plaintiff and defendant included an implied covenant of good faith and fair dealing.

157. Based on said Covenant, Plaintiff has a reasonable expectation that the Defendant employer

would treat the Plaintiff fairly and perform its obligation with fairness and good faith.

158. Defendant's bad faith impeded the plaintiff's ability to either perform her duties of employment or avail herself of the full benefits of employment.

159. The Defendant engaged in bad faith, as a consequence of agents and employees having engaged in retaliation, discrimination, harassment and creating and maintaining a hostile work environment.

160. By virtue of the defendant's actions, Plaintiff has been denied the reasonable opportunity to perform his obligation under her at-will contract for employment with the defendant.

161. The bad faith acts of the Defendant as alleged do not represent legitimate business decisions.

162. The terms of employment did not permit the Defendant's actions and omissions with respect to the Plaintiff's employment.

**AS AND FOR THE SEVENTH COUNT NEGLIGENT SUPERVISION, HIRING, RETENTION AND TRAINING**
**(as to the employer Defendant Only)**

163. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

164. The Defendants are responsible for the training and supervision of all employees, agents, contractors and subcontractors who manage the premises including but not limited to the Restaurant and employee/patron safety and have a duty to stop/prevent unlawful and/or tortious acts from occurring on the premises.

165. The actions of Defendant Alana Calvo are the responsibility of and are imputed to and binding upon the Defendants.

166. Defendants have a duty to prevent employees/servants/agents, including Defendant Alana Calvo from acting or engaging in unlawful and/or tortious conduct.

167. Defendants' negligence in hiring, supervising, and retaining employees/servants/agents that engaged in tortious and/or otherwise unlawful conduct was the direct and proximate cause of Plaintiff's injuries.

168. Defendants' owners are liable jointly and severally for damages resulting from Defendant Calvo's and Nicholson's intentional/ negligent actions/omissions.

169. Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestation of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life.

170. As a direct and proximate result of the Defendants' actions Plaintiff suffered apprehension of imminent harm and emotional distress therefrom.

**AS AND FOR THE EIGHTH COUNT**
**NEGLIGENCE RESPONDEAT SUPERIOR**
**(as to the employer Defendant Only)**

171. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

172. The Defendants violated the doctrine of *respondeat superior*, as the employer Defendant should be liable for the intentional torts of its employees (Ms. Calvo, Ms. Slager and Mr. Nicholson) as the employees were acting within the scope of their employment and in furtherance of the employer's business.

173. Defendant Calvo invaded Plaintiff's privacy by providing personal private information to Mr. Nicholson.

174. Plaintiff provided Defendants the information in the course of her employment with Defendants for employment purposes only.

175. Mr. Nicholson while employed with Buttercup commenced a pattern of stalking and

abuse directly linked from the dissemination of Plaintiff's private information by Ms. Calvo.

176. Defendant Calvo commenced a pattern of reckless, negligent, discriminatory, sexist, racist, harassing and retaliatory proceedings against the Plaintiff culminating in the termination of Plaintiff after she complained about severe and pervasive harassment at the workplace.

177. As a direct and proximate result of Defendants' tortious conduct, Plaintiff has suffered, and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestation of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life.

178. As described above, the individual Defendants willfully intended to cause Plaintiff emotional distress.

**AS AND FOR THE TENTH COUNT INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(as to all Defendants)**

179. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein

180. Defendants intended to inflict emotional distress or that they knew or should have known that emotional distress was a likely result of their conduct

181. The conduct of the Defendants was extreme and outrageous;

182. The Defendant's conduct was the cause of the plaintiff's distress

183. The emotional distress sustained by the plaintiff was severe.

184. As described above, Defendants willfully intended to cause Plaintiff emotional distress.

185. Defendants' actions were harmful and offensive to the Plaintiff and would be harmful and offensive to any reasonable person.

186. Defendants' actions did in fact cause the Plaintiff to suffer severe emotional distress.

**AS AND FOR THE ELEVENTH COUNT NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**(as to all Defendants)**

187. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

188. As described above, the individual Defendants knew or should have known that they intended to cause Plaintiff emotional distress.

189. Defendants' conduct was extreme and outrageous.

190. Plaintiff was in the zone of danger from Defendants' actions, and it could be foreseeable that their actions could or would cause emotional distress upon the Plaintiff.

191. Defendants' in perpetrating the above-described conduct, inflicted emotional distress as a result of terminating Plaintiff accusing of him of malfeasance and forcing her out of the workplace after she complained.

192. Defendants' actions were harmful and offensive to the Plaintiff and would be harmful and offensive to any reasonable person.

193. Defendants' actions did in fact cause the Plaintiff to suffer severe emotional distress.

**AS AND FOR THE TWELFTH COUNT INTRUSION UPON THE SECLUSION OF ANOTHER / BREACH OF PRIVACY**
**(as to all Defendants)**

194. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

195. "To establish a claim for intrusion upon the seclusion of another, a plaintiff must prove

three elements: (1) an intentional intrusion, physical or otherwise, (2) upon the plaintiff's solitude or seclusion or private affairs or concerns, (3) which would be highly offensive to a reasonable person." *Parnoff v. Aquarion Water Co. of Conn.*, 188 Conn. App. 153 (Conn. App. Ct. 2019), *see also Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010).

196. "For there to be liability, the defendant's interference with the plaintiff's seclusion must be substantial, must be of a kind that would be highly offensive to a reasonable person, and must be a result of conduct to which a reasonable person would strongly object." *Parnoff* at 173 (*citing 3 Restatement (Second), Torts* § 652B, comment (d)).

197. "[A]n actor commits an intentional intrusion if he believes, or is substantially certain, that he lacks the necessary legal or personal permission to commit the intrusive act." *Id.* at 174.

198. The Defendants here permitted the intrusion of Plaintiff's privacy or right to be remain secluded, by the dissemination of her personal private information, provided by Plaintiff to Buttercup for purposes of her employment only, and that Ms. Calvo provided said Plaintiff's information to Mr. Nicholson thereby disturbing her right to privacy, and any reasonable objective person would find such behavior of breaching Plaintiff's privacy to be abhorrent.

199. Mr. Nicholson's abusive actions and stalking as described above violated Plaintiff's right to privacy.

200. As Defendants' actions were harmful and offensive to the Plaintiff and would be harmful and offensive to any reasonable person.

201. Plaintiff suffered damages as a result of the aforementioned tortious conduct.

**AS AND FOR THE THIRTEENTH COUNT**
**UNPAID MINIMUM WAGES UNDER THE FLSA**
**(as to defendants Buttercup, Thomas and Serpa only)**

202. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

203. 29 U.S.C. § 206 requires employers to compensate their employees at a rate not less than the prevailing minimum wage.

204. As described above, Defendants are employers within the meaning of the FLSA, while Plaintiff is an employee within the meaning of the FLSA.

205. As also described above, Plaintiff worked hours in a workweek, yet Defendants failed to compensate Plaintiff in accordance with the FLSA's minimum wage provisions for each and every hour worked.

206. Defendants willfully violated the FLSA.

207. Plaintiff is entitled to minimum wage pay for all hours worked per week at her her regular rate of pay.

208. Plaintiff is also entitled to liquidated damages and attorneys' fees for Defendants' violations of the FLSA's minimum wage provisions.

**AS AND FOR THE THIRTEENTH COUNT**
**UNPAID MINIMUM WAGES UNDER C.G.S**
**(as to defendants Buttercup, Thomas and Serpa only)**

209. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

210. CGS § 31-69b requires employers to compensate their employees at a rate not less than the prevailing minimum wage.

211. Further Defendant Calvo took Plaintiff's tips and/or withheld tips from Plaintiff.

212. As described above, the Defendant is an employer within the meaning of the CGS, while Plaintiff is an employee within the meaning of the CGS.

213. As also described above, Plaintiff worked in excess of forty hours per week, yet the Defendant failed to compensate Plaintiff in accordance with the CGS's minimum wage provisions CGS 31-69b.

214. The Defendant' actions were in willful violation of the CGS.

215. Plaintiff is entitled to her minimum wage pay for all hours worked per week minimum wage or her regular rate of pay.

216. Plaintiff is also entitled penalty damages, attorneys' fees, and costs for the Defendant' violation of CGS 31-69b.

**DEMAND FOR A JURY TRIAL**

217. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demands a trial by jury on all claims in this action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A. A judgment declaring that the practices complained of herein are unlawful and in willful violation of the aforementioned federal; and state laws;

B. Awarding Plaintiff compensatory damages;

C. Awarding Plaintiff punitive damages;

D. Awarding Plaintiff liquidated damages;

E. Awarding Plaintiff costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs;

F. Pre-judgment and post-judgment interest, as provided by law; and

G. Granting Plaintiff further relief as this Court finds necessary and proper.

Dated: October 9, 2024
New York, New York

Respectfully submitted,

By: *Christopher J. Berlingieri*
CHRISTOPHER J. BERLINGIERI, ESQ.
(ct 30335)
BERLINGIERI LAW, PLLC
*Attorney for Plaintiff*
244 Fifth Avenue, Suite F276
New York, New York 10001
Tel.: (347) 766-5105
Fax: (914) 730-1044
Email: cjb@nyctlaw.com

# Exhibit A

**STATE OF CONNECTICUT**
**COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES**

**Claire Killin**
COMPLAINANT

CHRO No. 2440379

vs.

EEOC No. 16A-2024-00879

**Buttercup CT, LLC**
RESPONDENT

# RELEASE OF JURISDICTION

The Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint. The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred, in which the Respondent transacts business or in which the Complainant resides. If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

A copy of any civil action brought pursuant to this release must be served on the Commission at ROJ@ct.gov or at 450 Columbus Blvd., Suite 2, Hartford, CT 06103 at the same time all other parties are served. Electronic service is preferred. **THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT. § 46a-103.**

The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.

**DATE: 7/11/2024**

Tanya A. Hughes
Tanya A. Hughes, Executive Director

Service:
Complainant: Claire Killin, via Email: clairenicolekillin@gmail.com
Complainant's Attorney: Christopher Berlingieri, Esq., via Email: cjb@nyctlaw.com
Respondent's Contact: Michael Thomas, via Email: michaelthomas@thomasserpagroup.com

# Exhibit B

EEOC Notice of Right to Sue

MARIANNE MONTLER <MARIANNE.MONTLER@EEOC.GOV>
Mon 7/15/2024 3:28 PM
To:Christopher Berlingieri <cjb@nyctlaw.com>

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**New York District Office**
33 Whitehall St, 5th Floor
New York, NY 10004
(929) 506-5270
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 07/12/2024

**To:** Claire Killin
Via Email: cjb@nyctlaw.com

Cc: Buttercup LtdInc via email: michaelthomas@thomasserpagroup.com

Charge No: 16A-2024-00879

EEOC Representative and email: MARIANNE MONTLER
Supervisory Investigator
marianne.montler@eeoc.gov

---

### DISMISSAL OF CHARGE

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge. The EEOC has adopted the findings of the state or local fair employment practices agency that investigated your charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By:Yaw Gyebi, Jr.
07/15/2024

Yaw Gyebi, Jr.
District Director